IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION (COLUMBUS)

| | | |
|---|---|---|
| BATTELLE MEMORIAL INSTITUTE | : | Case No. ___2:14-cv-445___ |
| 505 King Avenue | : | |
| Columbus, OH 43201 | : | |
| | : | JUDGE _____ |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES DEPARTMENT | : | **COMPLAINT** |
| OF THE ARMY | : | |
| Serve: | : | |
| Army Contracting Command-Warren | : | |
| 6501 East 11 Mile Road | : | |
| Warren, MI 48397 | : | |
| | : | |
| Serve: | : | |
| Carter M. Stewart, U.S. Attorney | : | |
| U.S. Attorney's Office | : | |
| 303 Marconi Boulevard, Suite 200 | : | |
| Columbus, OH 43215 | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

**COMPLAINT FOR**
**DECLARATORY AND PERMANENT INJUNCTIVE RELIEF ("REVERSE FOIA")**

Plaintiff Battelle Memorial Institute ("Battelle"), by counsel, files this Complaint for declaratory and injunctive relief against the United States Department of the Army, Army Contracting Command-Warren ("Army"), and states as follows:

**NATURE OF THE ACTION**

1. This action arises from the Army's decision to release Battelle's confidential and proprietary commercial and financial information, including cost and pricing information related to Battelle's performance under a government contract pursuant to several Freedom of

80968192.2

Information Act ("FOIA") requests from FOIA Group, Inc., FedSources and The Shaw Group. Battelle requests the Court declare that the information released by the Army constitutes confidential commercial information that is exempt from disclosure under FOIA exemption 4 and prohibited from disclosure by the Trade Secrets Act. Battelle also requests the Court permanently enjoin the Army from further release of the information.

## THE PARTIES

2. Battelle is an Ohio corporation with its principal place of business located at 505 King Avenue, Columbus, Ohio 43201.

3. The United States Department of the Army, Army Contracting Command-Warren is an agency within the United States Department of Defense.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States, including the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; the Trade Secrets Act, 18 U.S.C. § 1905; and the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701-706. This Court also has authority to issue declaratory judgments under 28 U.S.C. §§ 2201-2202.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391 (e) and E.D. Ohio Loc. R. 82.1(d).

## BACKGROUND FACTS

6. On 3 December 2007, Battelle, a government contractor, was awarded Task Order No. W911SE-07-D-0011-DG01 ("Contract") by U.S. Army Contracting Command,

Tank Automotive and Armaments Command Life Cycle Management Command, Rock Island Arsenal ("TACOM Rock Island").

7.      Effective 31 October 2010, contractual administration responsibility for the Contract was transferred to Tank Automotive and Armaments Command Contracting Center-Warren ("TACOM-Warren").

8.      The Contract was for cost-effective contractor logistic support services for deployed, low density, highly complex CBRN systems (the CBRN CLS program).  The services were being obtained in support of the mission of the Joint Program Executive Office for Chemical and Biological Defense ("JPEO-CBD"), and the program management responsibility for the Contract was assigned to the JPEO-CBD's subordinate, Joint Program Manager Nuclear and Biological Contamination Avoidance ("JPM NBC CA").

9.      The Contract had an anticipated expiration date of 31 December 2012.

10.     The Contract included the Defense Federal Acquisition Regulation Supplement ("DFARS") clause 252.227-7016, Rights in Bid or Proposal Information, which prohibits the Government from releasing, performing, displaying, or disclosing information contained in a contractor's bid or proposal outside the Government without the contractor's written permission.

11.     Battelle performed the Contract successfully through its initial awarded period of performance.  The Army issued an initial one-year extension covering calendar year 2013, and Battelle is currently executing a second one-year extension covering calendar year 2014.

12.     In March 2014, the Army announced its intent to further contract with Battelle for CLS services for an additional six-month base period with six one-month options.  The

3

total period of performance including the option is 1 January 2015 through 31 December 2015.

13.     In late December 2012, Battelle learned that its trade secrets and confidential and proprietary financial information ("proprietary information") related to the Contract became available on the Internet through a website called "GovWin."

14.     GovWin.com is owned by Deltek, a company that provides, inter alia, implementation and strategic consulting for government contractors. Deltek advertises the GovWin site as "the essential source for information, teaming and software solutions to help organizations find, manage and win government business."

15.     According to Deltek, GovWin is "relied upon by [m]ore than 2,800 companies, including small businesses, new entrants to the public sector, and the largest government contractors" in order to gain "the latest and most comprehensive information solutions, including market intelligence, consulting, sales management tools, teaming solutions, and educational and networking events."

16.     Upon information and belief, Battelle's proprietary information was put into the public domain via the GovWin website after Deltek somehow received information that had been improperly disclosed by the Army pursuant to multiple FOIA requests.

**THE FOIA REQUESTS**

17.     Battelle's trade secret and confidential commercial information was released on at least seven separate occasions pursuant to FOIA requests made between 2008 and 2011.

18.     The first FOIA request (FP-08-01072) was made by AAI Textron Systems on 9 April 2008. AAI requested a copy of the Contract and its modifications and delivery orders.

4

19.     The Army's TACOM Rock Island FOIA office responded to the request on 18 April 2008.  AAI was told that it could find a copy of the contract on a certain Army website (www.forscom.army.mil) and a copy of task order DG01 and the modifications on a different Army website (https://aais.ria.army.mil).

20.     Battelle was not notified of the website postings or this FOIA request, did not provide the Army with written permission to release the information and was not afforded an opportunity to object to the posting or release of its trade secret and confidential commercial information.

21.     These postings were made in violation of DFARS 252.227-7016.

22.     The second FOIA request (#FP-10-023739) was made by FOIA Group, Inc. on 30 May 2010.  The request was for the Task Order Performance-Based Work Statements ("PBWS") for W911SE-07-D-0011, Task Order 0001, 0002 and DG01.

23.     Battelle was notified of this FOIA request and prepared redactions to the proprietary PBWS it had created.  The PBWS was a separate and distinct document, initially included in Battelle's competitively-solicited proposal for W911SE-07-D-0011/DG01; made part of the subsequently-awarded Contract by reference; and because of its proprietary nature, was maintained by TACOM Rock Island's contracting office as a distinct document, separate from the Contract itself.

24.     The redactions proposed by Battelle were accepted by the legal counsel for the Army's TACOM Rock Island FOIA office.  Because the Army's TACOM Rock Island FOIA office complied with Executive Order 12600 and Exemption 4 of the FOIA, on 13 August 2010 it withheld the release of 28 documents and provided FOIA Group, Inc. with only a redacted copy of the PBWS.

25.     The third FOIA request (#FP-11-00541) was made by FedSources on 5 October 2010.  The request was for all DG01 task order modifications issued to date.

26.     The Army's TACOM Rock Island FOIA office provided those task order modifications (presumably through Modification number 69) to FedSources via email on 1 December 2010.  Battelle was not notified of this FOIA request, nor was it afforded an opportunity to object to the release of its trade secret and confidential commercial information contained in those documents.

27.     The fourth FOIA request (#FP-11-004643) was submitted by FOIA Group, Inc. on 27 October 2010.  It requested the DG01 task order documents, including the SOW/PWS and relevant unit pricing for the Contract.

28.     Even though FOIA Group, Inc. specifically noted in its request that the unit pricing was "not clearly releasable," on 1 December 2010, the Army's TACOM Rock Island FOIA office provided FOIA Group, Inc. with copies of the task order modifications (presumably through Modification number 69), which contain Battelle's unit pricing.  Battelle was not notified of this FOIA request, nor was it afforded an opportunity to object to the release of its trade secret and confidential commercial information that was contained in those documents.

29.     Following the transition of contractual administration responsibility to TACOM-Warren effective 31 October 2013, the then-assigned TACOM-Warren Contracting Officer arbitrarily elected to integrate the contents of Battelle's proprietary PBWS into the contract document itself.  This was accomplished initially through Modification 68.  As a result, the third, and subsequent FOIA releases all improperly disclosed the contents of

Battelle's PBWS, which had previously been acknowledged as proprietary and redacted from the second FOIA release.

30.    The fifth FOIA request (#11-0109) was made by The Shaw Group on 17 March 2011.  It requested a copy of W911SE-07-D-0011-DG01.

31.    The Army's TACOM-Warren FOIA office provided the requested information to The Shaw Group via email on 23 March 2011.  Battelle was not notified of this FOIA request, nor was it afforded an opportunity to object to the release of its trade secret and confidential commercial information contained in those documents.

32.    The sixth FOIA request (#11-0172) was also made by The Shaw Group.  It was made on 7 April 2011, and requested the parent task order to the Contract and copies of all task orders performed.

33.    On 10 May 2011, the Army's TACOM-Warren FOIA office provided The Shaw Group with a copy of the DG01 Task Order and the 76 Modifications to Task Order DG01.  Battelle was not notified of this FOIA request, nor was it afforded an opportunity to object to the release of its trade secret and confidential commercial information contained in those documents.

34.    The seventh FOIA request (#12-0045) was made by FOIA Group, Inc. on 5 December 2011.  The request was for a copy of Task Order DG01, including any relevant modifications or attachments, the winning proposal, and the Request for Proposal ("RFP").

35.    On 20 December 2011, the Army's TACOM-Warren FOIA office provided FOIA Group, Inc. with almost 500 pages of documentation which included a conformed copy of DG01 and 89 modifications.

36.     On 11 January 2012, the Army's TACOM-Warren FOIA office provided FOIA Group, Inc. with a copy of the RFP.  FOIA Group, Inc. was told the attachments to the task order were not provided because the Contract was transferred to TACOM-Warren and most of the contract was in hard copy.  Since there are 46 attachments to the contract, the Army's TACOM-Warren FOIA office estimated it would take more than 40 hours to respond to the FOIA request, which exceeded the $55.00 FOIA Group, Inc. had offered to spend for the documents.  Battelle was not notified of this FOIA request, or afforded an opportunity to object to the release of its trade secret and confidential commercial information contained in those documents.

37.     The proprietary information released through FOIA, and now also available through GovWin, consists of five categories:  (1) detailed financial information; (2) actual costs, profits and profit rates; (3) workforce data that reveals labor costs, profit margins, and competitive vulnerability; (4) selling prices, purchase activity and freight charges; and (5) proprietary technical information, pricing strategy, and subcontractor information related to the CBRN CLS program.

38.     In direct violation of the terms of DFARS 252.227-7016, Rights in Bid or Proposal Information, the Army released, display and disclosed Battelle's bid and proposal information for the Contract outside of the Government, without Battelle's written permission.

39.      In direct violation of Executive Order 12600 and FOIA procedures, the Army never informed Battelle of six of the seven FOIA requests.  The Army failed to afford Battelle with its right to object to the release of its trade secret and confidential commercial information on those six occasions.

8

**BATTELLE'S COMMUNICATIONS WITH THE ARMY**

40.     Battelle notified ACC-Warren via email on 10 December 2012 that its trade secret and confidential commercial information was posted on the GovWin site, and requested that the information be immediately removed.

41.     On 17 December 2012, Battelle sent a letter to Ms. Shelley Pantalone, the FOIA officer at ACC-Warren.   The purpose of the letter was to detail the specific Battelle trade secret, confidential and proprietary information the Army had improperly released, to explain the severe competitive harm Battelle had suffered as a result of the disclosure, and to request that the Army take appropriate measures to remedy the inappropriate release of the information.

42.     Battelle contacted ACC-Warren again on 20 December 2012 and requested specific information related to the government's release of Battelle's trade secret, confidential and proprietary information.

43.     On 3 January 2013, ACC-Warren informed Battelle that it had released contract "W911SSE-07-D-0011 and/or Task Order DG01" information pursuant to a FOIA request.  ACC-Warren did not explain why it failed to notify Battelle before it released the information, as is required by Executive Order 12600 and FOIA.

44.     On 9 January 2013, Battelle contacted ACC-Warren to request copies of the various FOIA requests it had responded to,  including a copy of all documentation it had provided to the FOIA requester, and to again raise concerns that Battelle was not notified prior to the information being released.

45.     Battelle followed-up with ACC-Warren on 5 February 2013 because it had not yet received a response to the 9 January 2013 letter.

80968192.2

46.     On 18 March 2013, Battelle contacted Major Eric Heil, the TACOM-Warren Contracting Officer assigned to the Contract at that time.  Battelle apprised Major Heil of the government's inappropriate disclosure and its failure to address the matter.  Battelle requested an in-person meeting to address the inappropriate disclosure, but the meeting did not occur.

47.     ACC-Warren FOIA Officer, Shelley Pantalone responded to Battelle's request for information related to the FOIA requests on 27 March 2013.  Ms. Pantalone informed Battelle that, in addition to the three FOIA requests made to ACC-Warren, four FOIA files related to Battelle's request were transferred to ACC-Warren from ACC-Rock Island as a result of the 2010 Base Realignment and Closure ("BRAC").  Ms. Pantalone provided Battelle with the information she had related to those four FOIA requests, and noted that her office had no record of a FOIA request from Deltek related to the Contract.

48.     Between March and August 2013, Battelle engaged in numerous conversations with various Army personnel in an effort to resolve this matter.  None of the conversations resulted in any action being taken by the Army.

49.     On 9 August 2013, Deltek again posted on its GovWin site, Battelle's trade secret and confidential commercial information, this time linking it to the pending competition for the "Joint Enterprise Chemical, Biological, Radiological, Nuclear & High Yield Explosives Logistics (JECL)" multi-award IDIQ.  Deltek's posting exposed Battelle's information to its likely competitors for the JECL contract.

50.     The JECL competition was to be held by the Army Contracting Command Aberdeen Proving Ground's Edgewood Contracting division ("Edgewood Contracting").  For unknown reasons, Edgewood Contracting elected not to proceed with this competition in 2013.

80968192.2

51.     In March 2014, Edgewood Contracting announced plans to resume this competition, re-titled the "Joint Enterprise Contracted Logistics and Services Support (JE CLaSS)" multi-award IDIQ.  Deltek again posted on its GovWin site Battelle's trade secret and confidential commercial information, this time linking it to the re-titled, pending competition.

52.     On 13 August 2013, Battelle informed Mr. Tom Dickson, Branch Chief of the Army's Edgewood Contracting Division, of the improper release of Battelle's confidential information by Deltek on the GovWin site, and how it was linked to Edgewood Contracting's announcement for the pending JECL solicitation.  Battelle explained to Mr. Dickson that this was an inappropriate release of Battelle's trade secret and confidential commercial information that was now harming Battelle's competitive posture relative to the JECL opportunity.

53.     Battelle also met with Mr. Carmen Spencer, Joint Program Executive Officer of the JPEO-CBD program office on 13 August 2013.  Battelle briefly discussed its ongoing challenges with the Army's inappropriate release of the information, and Deltek's further dissemination of that data.  Battelle explained to Mr. Spencer that the Army had not responded to Battelle's complaints about the release of the information.

54.     Due to the Army's continued refusal to address the competitive harm caused by its inexcusable release of Battelle's trade secret and confidential commercial information, as well as its failure to comply with FOIA requirements, Battelle's outside counsel wrote to Mr. Kenneth Bousquet, the acting executive director of ACC-Warren on 3 September 2013 in an attempt to resolve the situation.  The 3 September 2013 letter explained at length the improper disclosures, explanations as to why the information is trade secret, confidential and

proprietary, the legal authority for Battelle's position that the Army's disclosure violated the FOIA, and demonstrated that the release of the information at issue had and would continue to cause competitive harm to Battelle.

55.    In response to the 3 September 2013 letter, representatives from ACC-Warren and Battelle met at ACC-Warren on 16 October 2013 to discuss the improper release of Battelle's trade secret and confidential commercial information.  ACC-Warren listened to Battelle's concerns regarding the improper release of the information, and explained that it had not yet completed its formal response to the 3 September 2013 letter.

56.    On 21 February 2014, in response to Battelle's request, ACC-Warren indicated that it had not received any FOIA requests related to the Contract since December 2012, it did not intend to release to the public any information related to the Contract before first notifying Battelle, and that it had not publicly released any conformed copies of the Task Order.  ACC-Warren further explained that individual modifications were released to the ACC-Warren Procurement Network (ProcNet) website, including all modifications through Modification BJ, dated May 21, 2013, but subsequent modifications had not been released to ProcNet and ACC-Warren did not intend to release any future modifications issued to the DG01 Task Order.

57.    Battelle received ACC-Warren's response to the 3 September 2013 letter on 27 March 2014.  It was the Army's position that the FOIA releases were not improper, much of the information released was not proprietary, and that Battelle has not been competitively harmed by the Army's release of Battelle's confidential and proprietary information.

58.    Battelle's letters to the Army explained that the released information specifically includes: (1) detailed financial information; (2) actual costs, profits and profit

rates; (3) workforce data that reveals labor costs, profit margins, and competitive vulnerability; (4) selling prices, purchase activity and freight charges; and (5) proprietary technical information, pricing strategy, and subcontractor information related to the CBRN CLS program

59. Battelle's letters further explained that the pricing information contained in the documents released by the Army in response to the various FOIA requests is exempt from disclosure under exemption 4, because the information could be used by Battelle's competitors to improve their own competitive bids for the future CLS procurement, thereby allowing the competitors to underbid Battelle for the contract.

60. Battelle's performance of the contract is ongoing. The recompete of the CLS contract is scheduled to begin before the end of 2014. The disclosure of Battelle's historical cost and pricing information, and contents of Battelle's proprietary PBWS, is not only useful to Battelle's competitors, but has caused and will continue to cause Battelle competitive harm by impairing its ability to effectively compete in the future CLS competition. The detailed disclosure of Battelle's historical cost and pricing information, and additional proprietary information noted herein also provides all competitors with the basis for justifying the realism and reasonableness of their own bids, which is a critical source-selection evaluation criteria in a competitive acquisition.

61. At all relevant times, Battelle has considered the financial and pricing information provided in response to the FOIA requests to be confidential and proprietary commercial and financial information within the meaning of FOIA, 5 U.S.C. §552(b)(4), and has protected it as such. Battelle does not customarily make this information available to the public.

62.     At all relevant times, Battelle has considered the information released in response to the FOIA requests to be trade secrets within the meaning of the Trade Secrets Act, 18 U.S.C. §1905, and has protected it as such.

63.     Battelle has suffered irreparable harm due to the Army's release of the information at issue and will continue to suffer irreparable harm from future releases of the information.

64.     There is no harm to the United States Government from protecting the information at issue against the release to the public or to a FOIA requester.

65.     Protecting against future release of the information at issue will serve the public interest by fostering fair competition.

## COUNT I
## (BREACH OF CONTRACT)

66.     Battelle hereby re-alleges and incorporates by reference paragraphs 1 through 62 of this Complaint as if fully set forth herein

67.     Battelle and the Army were parties to a contract and several task orders for the sale of contractor logistic support services for deployed, low density, highly complex CBRN systems in support of the mission of the Joint Program Executive Office for Chemical and Biological Defense.

68.     The contract was memorialized in writing as Task Order No. W911SE-07-D-0011-DG01 ("Contract").

69.     The Army accepted and paid for the services provided by Battelle pursuant to the Contract.

14

70.     The Contract contains DFARS clause 252.227-7016, Rights in Bid or Proposal Information, which prohibits the Government from releasing or disclosing information contained in Battelle's bid or proposal outside the Government without Battelle's written permission.

71.     Starting in 2008, the Army released, via website postings and pursuant to FOIA requests, trade secret and confidential commercial information contained in Battelle's proposal for the Contract, without Battelle's written permission.

72.     The Army's release of this information was in violation of DFARS 252.227-7016, and therefore in breach of the Contract.

73.     Battelle will suffer damages, in an amount to be proven at trial, as a direct and proximate result of the Army's breach of contract.

74.     The amount of damages will be in excess of $4,000,000, including lost profits on the future CLS contract should it be awarded to a competitor of Battelle.

## COUNT II
### (FOIA EXEMPTION 4)

75.     Battelle hereby re-alleges and incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

76.     The information at issue is all confidential commercial and financial information that is exempt from disclosure under FOIA exemption 4.  5 U.S.C. § 552(b)(4).

77.     The Army is prohibited from making a discretionary release of the information under FOIA or otherwise.

78.     Release of the information by the Army was therefore not in accordance with law under Section 706 of the Administrative Procedure Act.  5 U.S.C. § 706.

80968192.2

## COUNT III
### (TRADE SECRETS ACT)

79.     Battelle hereby re-alleges and incorporates by reference paragraphs 1 through 60 of this Complaint as if fully set forth herein.

80.     The information at issue constitutes trade secrets under the Trade Secrets Act. 18 U.S.C. § 1905.

81.     18 U.S.C. § 1905 provides, in part, that no Officer or Employee of the United States or any agency may publish, disclose or divulge any information that ". . . concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association; . . . "  The Army has disclosed such information.

82.     Disclosure of the information by the Army caused Battelle immediate and irreparable harm, is prohibited by the Trade Secrets Act, and therefore is not in accordance with law under Section 706 of the Administrative Procedure Act.  5 U.S.C. § 706.

## COUNT IV
### (ARBITRARY AND CAPRICIOUS AGENCY ACTION)

83.     Battelle hereby re-alleges and incorporates by reference paragraphs 1 through 64 of this Complaint as if fully set forth herein.

84.     The Army's decision to release the information at issue is arbitrary and capricious and an abuse of discretion under Section 706 of the Administrative Procedure Act. 5 U.S.C. § 706.

16

## COUNT V
## (DECLARATORY JUDGMENT ACT)

85.    Battelle hereby re-alleges and incorporates by reference paragraphs 1 through 66 of this Complaint as if fully set forth herein

86.    This Court has authority pursuant to 28 U.S.C. §§ 2201-2202 to declare the rights of Battelle with respect to the information at issue and the Army's actions, as follows:

(a)    The information at issue is confidential commercial and financial information obtained from a person (Battelle), is customarily kept confidential by Battelle, and therefore is protected by FOIA exemption 4, 5 U.S.C. § 552(b)(4), and the Trade Secrets Act, 18 U.S.C. § 1905;

(b)    The information at issue is confidential commercial and financial information obtained from a person (Battelle), there is currently actual and potential competition, prior and continued release or disclosure of the information likely would result in substantial competitive harm to Battelle in current and/or future domestic and international competitions for the same or similar products and services, and the information therefore is protected by FOIA exemption 4, 5 U.S.C. § 552(b)(4), and the Trade Secrets Act, 18 U.S.C. § 1905; and

(c)    The Army's decision to release the information at issue is arbitrary, capricious, an abuse of discretion or otherwise contrary to law in violation of the Administrative Procedure Act, 5 U.S.C. § 701-706.

## REQUESTED RELIEF

WHEREFORE, Plaintiff Battelle Memorial Institute respectfully requests the Court to:

17

80968192.2

A.      Declare judgment against the Army for breach of contract for all direct, incidental and consequential damages, in an amount to be determined at trial or a hearing;

B.      Declare that the  information at issue is confidential commercial and financial information obtained from a person (Battelle), is customarily kept confidential by Battelle, and is therefore protected by FOIA exemption 4, 5 U.S.C. § 552(b)(4), and the Trade Secrets Act, 18 U.S.C. § 1905;

C.      Declare that the  information at issue is confidential commercial and financial information obtained from a person (Battelle), that there is currently actual and potential competition, and that the prior and continued release or disclosure of the information likely has and would continue to cause Battelle to suffer substantial competitive harm in current and/or future domestic and international competitions for the same or similar products and services, and therefore the information is protected by FOIA exemption 4, 5 U.S.C. § 552(b)(4), and the Trade Secrets Act, 18 U.S.C. § 1905;

D.      Declare that the Army's decision to release the information at issue is arbitrary, capricious, an abuse of discretion or otherwise contrary to law in violation of the Administrative Procedure Act, 5 U.S.C. § 701-706;

E.      Permanently enjoin the Army and its officers, agents and employees, and those acting in concert with it, from continuing to disclose the information at issue, or from making any additional public release in response to a FOIA request, or otherwise, of the information at issue;

F.      Award Battelle its attorney's fees and costs; and

G.      Award Battelle such other and further relief as may be deemed just and proper by the Court.

Respectfully submitted,


 s/ Victoria L. Nilles
Victoria L. Nilles (0076616)
        Trial Attorney
TAFT STETTINIUS & HOLLISTER LLP
40 North Main Street
Suite 1700
Dayton, Ohio 45423
Telephone: (937) 228-2838
Facsimile: (937) 228-2816
Email: vnilles@taftlaw.com

*Attorney for Plaintiff Battelle Memorial Institute*


Dated : 14 May 2014

80968192.2